IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LYNETTE B. WYNN,

    Plaintiff,

vs.                                                      Civ.No. 97-1152 MV/WWD

KENNETH S. APFEL, COMMISSIONER
OF SOCIAL SECURITY,[1]

    Defendant.


## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION
### Proposed Findings

    1.  This matter comes before the Court upon plaintiff's Motion to Reverse and Remand for a Rehearing, filed March 31, 1998 [5-1]. The Commissioner denied plaintiff's request for Social Security Disability Insurance. Plaintiff is 38 years old and alleges a disability which commenced February 14, 1994, due to back pain. She has completed three years of college and has worked in the past as a sales clerk, video clerk, teacher's assistant, day care teacher and receptionist.

    2.  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") denied Plaintiff's application, concluding that Plaintiff's residual functional capacity at least meets the demands of her past relevant work as a day care teacher and that she

---

[1] President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of August 29, 1997. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S. Apfel should be substituted as defendant for Acting Commissioner John J.Callahan, who was the appropriate party at the time of the underlying decision. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

has a work capacity consistent with a range of sedentary and light work. The ALJ concluded that Plaintiff was therefore not disabled. The Appeals Council denied Ms. Wynn's request for review, thus the ALJ's decision is the final decision of the Commissioner. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

3. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

4. The allegations of error are not set out clearly in Plaintiff's brief or categorized in terms of the sequential analysis. However, they appear to be: (1) that the ALJ's finding at step two that Plaintiff's impairments have not singly or in combination met or equaled in severity a listed impairment was not supported by substantial evidence; (2) the ALJ erred at step four in finding that Plaintiff has the residual functional capacity which meets or exceeds the demands of her past relevant work as a day care teacher; and (3) that the ALJ erred in finding that Plaintiff has a residual functional capacity for a reduced range of sedentary and light work.

5. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson at 1486 (citing 42 U.S.C. §423 (d)(1)(A)). Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. Id.; see 20 C.F.R. § 404.1520(a - f). The sequential evaluation process ends if at any step the Commissioner finds that the

claimant is disabled or not disabled. Id. (citations omitted).

6. At the first four levels of the evaluation, the claimant must show: (1) that she is not working; (2) that she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that she is unable to perform work done in the past. At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work. Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7. Plaintiff went through several back surgeries during the period 1982 to 1986, and status post fusion of L4-S1 in July 1994.[2] She complains of constant pain which is brought on by standing, walking and housework. Tr. at 79. The pain used to radiate down her left leg, but the surgeries alleviated most of that pain as well as the tingling, and increased her stability. Tr. at 26-27. Ms. Wynn stated that her back pain has been the cause of her quitting every job she has held, as a result of long absences from work due to surgery. Tr. at 35. At the hearing, she mentioned attending a pain clinic in Alabama, which did not have any lasting effects. She stated that the fact that she was not improving made her feel depressed. Tr. at 36.

8. Plaintiff states she cannot lift more than 10 pounds and cannot twist or bend without pain. Tr. at 26-27. Her typical day starts with making her husband breakfast, although she states that she makes meals where she needs to stand only about 10 to 15 minutes at a time. She can't vacuum or mop because the pushing causes pain. Tr. at 30, 80. She can perform minor household chores as long as she doesn't have to stand for longer than 15 minutes, such as dusting

---

[2] Other references in the record indicate that the surgery was performed in August 1994, or even as early as June 1994. Tr. at 88, 117, & 104.

or washing dishes.  Her husband helps out with the chores Plaintiff cannot do, such as lifting the clothes basket or unloading the dryer.  Tr. at 29-30, 32, 34, 80.

    9.  Plaintiff spends much of the day mostly visiting her mother, whom she drives to see, and reading.  Tr. at 32.  She testified that she needs to lie down with her legs elevated twice a day for one to two hours.  She used to take Darvocet, Lortab and Flexeril several times a day until she became pregnant, after which she restricted herself to extra-strength Tylenol.  At the time of the hearing, Plaintiff was four months pregnant.  She told the ALJ that she decided to become pregnant because the condition wouldn't make her back any worse.  Tr. at 35.

    10.  Dr. James Boone was Plaintiff's treating physician.  In February 1994, he noted that Ms. Wynn reported feeling no better although she had felt better for a time and that her legs "occasionally go numb."  Tr. at 135.  There was no evidence of nerve root tension and the neurological examination was normal.  Dr. Boone that felt that Plaintiff had achieved maximum medical improvement and that she could return to work four hours a day part-time, and full-time work where she would be restricted from heavy lifting.

    11.  However, two months later (April 1994), Dr. Boone noted "slight sounds of nerve root tension on the right side but no focal neurological deficit."  Tr. at 128.  He decided that Plaintiff should not be returned to a limited type of work.  Instead, he opined that she should be "retired."  Id.  In May, the doctor referred her to Dr. Dean Smith, an orthopedic surgeon for surgery evaluation.  Tr. at 126.

    12.  Also in May, Plaintiff was evaluated by Dr. Marc Dickason, who saw evidence of disc degeneration from previous surgeries and referred her for epidural injections, which did not help.  He also noted stenosis and opined that "probable neurologic abnormality is noted."  Tr. at

131. Dr. Dickason recommended that Plaintiff be restricted to "light duty with no lifting, stooping, bending, [and] squatting." Tr. at 132. He felt that it was "unknown" whether Plaintiff had reached maximum medical improvement, but did not feel she could return to full-time work. Id.

13. Ms. Wynn's post-operative recovery appears to have been uneventful, and even progressively promising.

14. Dr. Smith, the orthopedist, found that Plaintiff's pain was a result of degenerative disc disease of L4-5 and L5-S1. Tr. at 123. Plaintiff reported "very little" left leg pain. Tr. at 124. Straight leg raises produced some back pain and range of motion of the back reproduced symptoms, but there was no reproduction of radiculopathy. Deep tendon reflexes were normal. Because Plaintiff had already undergone six back surgeries, Dr. Smith scheduled her for an MMPI. The test revealed a possible "significant" psychological component ("[Plaintiff] does have quite a bit invested in her back pain"), but no findings which would have precluded surgery. Tr. at 120.

**First Alleged Error**

15. Plaintiff contends that the ALJ erred at step two in finding that Plaintiff's impairments have not singly or in combination met or equaled in severity a listed impairment. A claimant's own descriptions of her impairments is not sufficient to establish disability under the Listings. 20 C.F.R. § 404.1528(a); Bernal v. Bowen, 851 F.2d 297, 300 (10th Cir. 1988). The ALJ found that Plaintiff's impairment fell short of listings-level severity. Tr. at 12.

16. The relevant listing is 1.05(C). 20 C.F.R. Subpt.P. App.1. Even if Plaintiff is correct that the ALJ overlooked medical findings of spinal stenosis, see ¶ 12, above, the error is minimal,

since the result would be the same. The record lacks any evidence which would satisfy all the requirements in 1.05(C). In addition to a vertebrogenic disorder (such as spinal stenosis) which has persisted for "at least 3 months . . . *and* expected to last 12 months" (emphasis added), listing 1.05(C) also requires *both*: (1) "pain, muscle spasm and significant limitation of motion in the spine; and (2) appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss."

   17.  Plaintiff's motor and sensory functions were normal, even prior to her last surgery. Tr. at 135-36. Also, as ALJ noted, physical exam elicited normal neurological responses. Tr. at 12, 124, 135. Dr. Smith's examination revealed a reproduction of symptoms with range of motion to the back, but no reproduction of radiculopathy. Tr. at 123-24. Neither do these findings fall into a category where they would be equal to a listed impairment in severity and duration, as the medical findings must be equal to would have to be equal to *all* the criteria for that impairment. Sullivan v. Zebley, 493 U.S. 521, 531 (1990); Bernal, 851 F.2d at 300. Thus, the ALJ's finding at this level of inquiry was based on substantial evidence.

**Second and Third Alleged Error**

   18.  Because both the second and third allegations of error concern findings on Plaintiff's residual functional capacity, I address them at the same time. Plaintiff essentially contends that the ALJ erred in finding that she can perform a reduced range of sedentary or light work. The ALJ discussed doctors' reports and objective findings and, in particular, treatment notes which demonstrated an improvement in Plaintiff's symptoms following her July 1994 surgery.

   19.  Plaintiff contends that the ALJ did not accord proper deference to her treating physicians, Dr. Smith and Dr. Boone. However, it is clearly within the ALJ's authority to reject

6

physician's opinions which are unsupported by the objective evidence of record.  See Castellano v. Sec. of Health & Hum. Serv., 26 F.3d 1027, 1029 (10th Cir. 1994).

20.   For example, Dr. Boone's prognosis for Plaintiff in February 1994 (before the last surgery) was markedly different from one two months later.  Plaintiff went from having a reasonably good prognosis, with a recommendation of a return to light work part-time, and to full-time work with limitations, to a recommendation that she be "retired" and collect social security benefits.  As the ALJ noted, Tr. at 14, other than hearing "sounds" of nerve root tension, there was no mention of any diagnostic testing or other medical findings to support the change of opinion.  The ALJ is not required to accord much weight to internally inconsistent findings or reports.  Goatcher v. Dep't of Health & Hum. Serv., 52 F.3d 288, 290 (10th Cir. 1995).

21.   Similarly, Dr. Smith opined that Plaintiff was disabled.  Tr. at 127, 154.  However, his own medical findings elsewhere, in Plaintiff's pre-surgical visits and particularly in the post-fusion treatment notes, do not support that conclusion.  Just a couple of months post-op, Ms. Wynn had a "little bit of pain that goes into her left thigh and has some back pain but otherwise she appears to be doing better."  Tr. at 116.  One month later, it was noted that she was "markedly down on pain medication."  Tr. at 114.

22.   By December, Plaintiff had started physical therapy, and was exercising at home.  Tr. at 111.  She still had pain, but stated that "she's definitely better than she was preoperatively.  The left leg pain is gone."  Id.  She was also weaning herself off medication.  A note from a follow-up visit in March 1995 stated that Plaintiff was doing better regarding her back pain, and that although she continued to have some pain, it was "not the constant pain that she had preoperatively."  Tr. at 110.  She was given a prescription for Norgesic Forte, but it was noted

7

that she had not been calling in for pain medication recently.  Id.

23. The ALJ also gave reasons for discounting certain reports.  He did not ignore the inconsistencies present in the medical evidence, but rather, gave his reasons for discounting certain of the reports.  Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects).  Casias v. Sec'y of Health & Hum. Serv., 933 F.2d 799, 801 (10th Cir. 1991).

24. In this case, the ALJ took particular care in examining the various medical reports and treatment notes.  He observed that the specific limitations placed on Plaintiff even prior to surgery (lifting, stooping, bending and squatting) were still consistent with the requirements of light work, particularly in light of the fact that both Dr. Boone and Dr. Dickason had opined that Plaintiff could perform that level of activity.  Tr. at 14.  The post-surgical records, which clearly depicted a favorable response to the fusion, only provided additional evidence of Plaintiff's residual functional capacity to do light work.

25. The ALJ also considered two undated forms, or "interrogatories," filled out by Drs. Boone and Smith in which both physicians consider Ms. Wynn to be precluded from working consistently and full-time and in which they pronounce her as disabled.  Tr. at 141-42, 146-47.  I note that the fact that they were undated is not in itself fatal, since both forms provide dates on which the physicians last saw Plaintiff (April and November 1995).  Tr. at 139, 144.

26. The ALJ gave these forms no weight because he found the questions to be "leading and conclusory and litigation oriented, and they are not supported by attached medical records with supporting objective examination findings."  In addition, he found them to be inconsistent

with the physician's previous findings in the record.  Tr. at 15.  In light of these other available reports and objective findings, the ALJ's reasons for discounting these documents were supported by substantial evidence.

27.  Contrary to Plaintiff's assertions, the ALJ's determinations were not an effort to supplant the role of the doctor, but rather were part of the ALJ's duty to resolve inconsistencies. Physicians can make findings relating to opinions about the amount of hours claimant can work. See Smallwood v. Chater, 65 F.3d 87, 88 (8th Cir. 1995).  However, the Commissioner, not the physician, has the responsibility to examine medical source opinions and make the determination on whether claimant meets statutory definition of disability.  See 20 C.F.R. § 404.1527(e)(1) (statement by a medical source that claimant is "disabled" or "unable to work" does not mean that the Commissioner will determine claimant is disabled).

28.  Ms. Wynn's job as a day care teacher involved walking for a total of 2 hours a day, standing for two and sitting for four.  Tr. at 75.  She occasionally had to bend, and was required to be able to lift 2 pounds (for lifting the children's sleeping cots).  The ALJ found these demands to be consistent with those of a range of sedentary and light work, given the limitations placed on Plaintiff and the medical findings given weight from the record.[3]

29.  A residual functional capacity examination completed as a consult for the Social Security Administration in October 1994, showed that Plaintiff can lift 10 pounds frequently, 20 pounds occasionally; stand or walk 6 out of 8 hours (with normal breaks); sit for 6 out of 8 hours

---

[3] Sedentary work involves lifting no more than ten pounds at a time, no more than two hours of walking and standing a day, and a total of six hours of sitting a day.  SSR 83-10; 20 C.F.R. § 404.1567(a).  Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, requires a good deal of walking, standing, or pushing and pulling when sitting is involved.  SSR 83-10; 20 C.F.R. § 404.1567(b).

(with normal breaks); and have an unlimited ability to push and pull.

Credibility Inquiry

30. As noted above, the limitations that were placed on Plaintiff did not preclude light work. A determination that plaintiff was not credible because her testimony conflicted with the medical records is a recognized basis for discounting that testimony. See Eggleston v. Bowen, 851 F.2d 1244, 1247 (10th Cir. 1988). Other than the "interrogatories" filled out by Plaintiff's two doctors which were properly discounted by the ALJ, Plaintiff's testimony stands alone with respect to considerable limitations in sitting, standing and walking and is not otherwise supported by the record. 20 C.F.R. § 404.1528 (claimant's statements alone are not enough to establish that there is a physical or mental impairment).

31. Symptoms are considered along with "all of the available evidence, including . . . medical history, the medical signs and laboratory findings and statements. . . ." § 404.1529(a). The ALJ then determines the extent to which alleged functional limitations and restrictions due to pain and other symptoms are reasonably consistent with this other evidence in affecting plaintiff's ability to work. Id. In this case, the ALJ conducted a careful review of all the available medical evidence, looking at findings relative to Plaintiff's residual functional capacity both before and after her last surgery and resolving apparent inconsistencies where necessary.

32. The ALJ viewed Plaintiff's testimony that she chose to become pregnant as an "admission that she is prepared physically to care for her child, care which is also consistent with the requirements of her past work as a day care teacher." Tr. at 15. A credibility inquiry based solely on this factor would not only be suspect, but also not based on substantial evidence. Here, however, the ALJ considered this issue within the broader scope of a legally correct credibility

10

inquiry, which included a variety of other factors.[4]

33.   In sum, (1) the ALJ's finding at step two that Plaintiff's impairments have not singly or in combination met or equaled in severity a listed impairment was supported by substantial evidence and (2) the ALJ did not err in finding that Plaintiff has the residual functional capacity which meets or exceeds the demands of her past relevant work as a day care teacher or in finding that the ALJ erred in finding that Plaintiff has a residual functional capacity for a range of sedentary and light work.[5]

### Recommendation

I recommend that plaintiff's Motion to Reverse and Remand for a Rehearing [5-1] be denied and that this cause of action dismissed with prejudice.  Timely objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

*[signature]*
UNITED STATES MAGISTRATE JUDGE

---

[4] In determining credibility, the ALJ may consider the nature of daily activities (and arguably, of anticipated or planned daily activities) as well as medication levels and their effectiveness, the frequency of medical contacts, the subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.  Thompson, 987 F.2d at 1489 (quoted case omitted).

[5] I note that even assuming the ALJ was in error at step four in determining that Plaintiff could perform light work, her ability to perform sedentary work would still mandate a finding of nondisabled, according to the grids.  See, e.g., Quevedo v. Chater, unpubl.op., 1995 WL 337993 *3 (N.D.Cal.) (even if substantial evidence did not exist to support the finding that plaintiff was capable of light unskilled work, substantial evidence exists to support a finding that plaintiff is capable of sedentary work, and therefore would not be considered disabled under the Social Security Act).